FILED

2008 Dec-10  PM 02:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

DISTRICT ATTORNEY
ARTHUR GREEN,

      PLAINTIFF,

v.                                CASE NO. CV-08-J-1933-S

CVS CAREMARK CORPORATION,
et al.,

      DEFENDANTS.

## <u>MEMORANDUM OPINION</u>

Pending before the court is defendant Wal-Mart Stores, Inc.'s, notice of removal (doc. 1), the plaintiff's motion to remand (doc. 13), defendant Wal-Mart Stores, Inc.'s response (doc. 18) and the plaintiff's reply (doc. 20).  Having considered the foregoing, including the arguments of the parties, and the relevant law, the court finds as follows:

### I.  The Plaintiff's Claims

The plaintiff, a district attorney within the State of Alabama, brings this action as class representative for all residents of Alabama who have received generic drugs from one or more of the named defendant pharmacies after presenting a prescription

for a brand name drug, when the prescription mandated "dispense as written."[1]  The plaintiff further sues as class representative of each district attorney in the state who has a resident in his or her circuit who is within the foregoing class.  The plaintiff states claims for violations of the *Code of Alabama*, more specifically set forth as follows:

1. Count 1:  Violation of § 34-23-8, *Code of Alabama*, which, *inter alia*, prohibits dispensing a different drug or brand of drug from that on a prescription unless the doctor who writes the prescription signs the "product selection permitted" line.

2. Violations of the Alabama Deceptive Trade Practices Act ("ADTPA"):

a. Count 2:  Violation of § 8-19-5(2), in that filling "dispense as written" prescription with generic drugs caused confusion among consumers.

b. Count 3:  Violation of § 8-19-5(5), in that filling a "dispense as written" prescription with a generic drug was

---

[1]The court notes that the complaint does not name as defendants any individual pharmacists who actually dispensed medications in the manner alleged.  Similarly, the complaint does not allege that the defendant pharmacies encouraged, coerced or persuaded their respective employee pharmacists to so engage in violations of Alabama law.

a false representation by defendants that the generic drug
is the same as the brand name medication prescribed.

c.   Count 4: Violation of  § 8-19-5(7), for falsely
representing that generic drugs are "equal to," "the same
as," or "just as effective" as brand name medications.

d.   Count 5: Violation of § 8-19-5(27), for falsely
representing to consumers that the pharmacies in question
were authorized by the consumers' physicians to substitute
generic medications for brand name medications.

3.  Count 6: Violation of § 6-6-590, Alabama Code, known as the "Quo
Warranty Statute," in which the plaintiff seeks to remove the corporate
charters of the defendant corporations for repeated violations of various
Alabama statutes.[2]

The plaintiff's prayer for relief seeks actual, compensatory, punitive and/or
exemplary damages as assessed by a jury,[3] as well as statutory penalties and fees,

---

[2]This statute specifically requires that actions under this section "must be commenced in
the circuit court of the county in which the corporation has its principal office, or ...of any county
in which it does business...."  Such an action must be brought by a District Attorney.  *See* § 6-6-
590, Ala.Code.

[3]Interestingly, the plaintiff did not file a demand for a jury trial.  Rather, the only demand
for this case to be heard by a jury came from defendant Wal-mart.  See doc. 17, "defendant Wal-
Mart Stores, Inc.'s jury demand."

injunctive relief, and suspension or revocation of defendants' business licenses.

## II.  Removal Standards

The court bears in mind the requirement that the removal statutes are to be construed narrowly, and against federal jurisdiction. *Shamrock Oil Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941).  The defendants, as the parties removing the action to federal court, have the burden to establish federal jurisdiction. *See Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir.1998); *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir.1996).  All doubts (and uncertainties) about federal court jurisdiction must be resolved in favor of a remand to state court.  *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994)("Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; ... where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand."); *Diaz*, 85 F.3d at 1505.  Removal statutes should be construed narrowly with any doubt resolved in favor of remand. *Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir.2003); *Diaz*, 85 F.3d at 1505.

## III.  Removal under CAFA

This court must adhere to the traditional rule in the CAFA context that a removing defendant bears the burden of establishing subject matter jurisdiction. *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328 (11th Cir.2006).  Where damages are

4

unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence.  *Lowery v. Alabama Power Company*, 483 F.3d 1184, 1208 (11th Cir.2007).  In its notice of removal, defendant Wal-Mart Stores, Inc. ("Walmart"), asserts that removal from the Circuit Court of Jefferson County, Alabama, Bessemer Division, to this court is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), as well as diversity jurisdiction.  CAFA grants district courts original jurisdiction over civil class actions filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant and the amount in controversy for the putative class members in the aggregate exceeds the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). The Act authorizes removal of such actions pursuant to 28 U.S.C. § 1446.[4]

In support of its removal, defendant Walmart argues that because the plaintiff alleges he is a "duly sworn District Attorney of the State of Alabama for the Bessemer

---

[4]CAFA makes no exception for cases filed by state attorney generals.  Congress considered and rejected an amendment that would have exempted class actions filed by state attorneys general from removal under CAFA. *See* 151 Cong. Rec. S1157, 1163-64 (daily ed. Feb. 9, 2005).  However, some  Senators rejected the amendment because they thought it was unnecessary. *See, e.g.*, 151 Cong. Rec. at 1163 (daily ed. Feb. 9, 2005) (statement of Sen. Grassley) ("The key phrase [ ] is 'class action.' Hence, because almost all civil suits brought by State attorneys general are parens patriae suits, similar representative suits or direct enforcement actions, it is clear they do not fall within this definition [of class action]. That means that cases brought by State attorneys general will not be affected by this bill.").

Division of the 10th Judicial Circuit" and a "constitutional officer of the state," the plaintiff is therefore "alleged to be a citizen of Alabama."  Notice of Removal, ¶ 8. As Walmart is a Delaware corporation, defendant Walmart concludes the parties meet the minimal diversity requirements of CAFA.[5]  Notice of Removal, ¶ 9.

Defendant Walmart also alleges that the jurisdictional minimum of $5,000,000.00, exclusive of interest and costs, as required by CAFA, is satisfied here because for each violation of the Alabama statutes listed above, the plaintiff seeks compensatory and statutory damages of §1,000.00 to $2,000.00.  Notice of Removal, ¶¶ 10, 13.  Defendant Walmart states that each resident of Alabama who had a prescription improperly filled as asserted would therefore have a claim for statutory damages of $9,000.00 for each occurrence as well as compensatory damages.[6]

A. *Jurisdiction requirement of $5,000,000.00*

Defendant Walmart's arguments are not supported by the clear statutory

---

[5]It is undisputed that the other named defendants are not residents of Alabama.

[6]As explained infra, in making this argument, Walmart mixes the proverbial apples and oranges.  Pursuant to § 8-19-10(f), *Code of Alabama 1975*, as amended, a district attorney had the authority to bring an action in a representative capacity on behalf of any named person or persons.  In such a suit, "the court shall not award minimum damages or treble damages, but recovery shall be limited to actual damages suffered by the person or persons, plus reasonable attorney's fees and costs."  In contrast, a district attorney can proceed under § 8-19-11(b), Ala.Code, which sets a cap of $2,000.00 per violation in civil penalties, although § 8-19-11(f) Ala.Code requires such sum must be remitted to the state treasurer for credit to the office of the district attorney.  In other words, the plaintiff cannot recover both statutory damages and compensatory damages in an action brought in a representative capacity.

language of the Alabama Code.  Ala.Code § 34-23-8(7) provides that "[a]ny person who violates the provisions of this section shall be punished by a fine up to $1,000.00."  The court notes the absence of the words "per violation" from this code section.  Ala.Code §8-19-11(b) allows a "civil penalty of not more than $2,000 per violation upon petition by the Attorney General or a district attorney acting in the name of the state...."  Penalties so collected "shall be remitted by the circuit court to the state treasurer and shall be credited to the account of either the office of the Attorney General or the office of the district attorney, whichever initiated the action ...."  Ala.Code § 8-9-11.

The court is of the opinion that defendant Walmart has not shown that the jurisdictional minimum under CAFA has been satisfied.  The Eleventh Circuit has stated: "[w]here, as here the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Williams v. Best Buys*, 269 F.3d 1316, 1319 (11th Cir. 2001), citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir.1996), *overruled on other grounds by Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000).  A "conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden."

*Williams*, 269 F.3d at 1319-20.

Defendant Walmart provides no explanation for how the two stated Alabama code sections could provide a claim for any dollar amount to anyone other than the State of Alabama, which the plaintiff asserts is the real party in interest. The plaintiff specifically stated that he "seeks no money damages for citizens under his 'Pharmacy Statute' claims. He seeks only to have the Defendants declared in violation of the Pharmacy Statute, to restrain them from future violations, and to recover statutory financial penalties for the State..." Plaintiff's reply (doc. 20), at 7. With regard to the ADTPA claims, the plaintiff states that he "sues for the citizens because the ADTPA forbids any citizen from bringing a class action based on the ADTPA...." *Id.* He concludes that "the fact that the class claim vests only in the State, via the District Attorney (and Attorney General), confirm that the State is the real party in interest. *Id.*, at 9.

The court agrees with these arguments of the plaintiff. No provision for any compensatory damages to an individual are available under the counts in this case. Thus, the court cannot simply multiply some dollar amount by "many" of the states' 4.5 million residents as suggested by defendant Walmart. *See* Response in Opposition, at 19 (suggesting that at $9,000.00 per violation, only 600 of the 4.5 million residents would need to be members of the class). Similarly, defendant

Walmart asserts that since Walmart filled more than two million prescriptions in the previous four year period in Jefferson County, Alabama, if one in 3,000 was filled by a generic when it should not have been, the amount in controversy would exceed $5,000,000.00.  Response in Opposition, at 20.  The flaw in this argument is there is no allegation, evidence, proof  or pleading before this court which states how often a prescription is signed "dispense as written," written for a brand name medication, but filled by a generic by a pharmacist by one of the named defendants.  At a minimum, the court would have to have some evidence reflecting how many of the two million prescriptions Walmart stores located in Jefferson County, Alabama, have filled were signed "dispense as written" and some evidence as to how often pharmacists ignore that designation.[7]  The court finds it just as reasonable to assume this rarely occurs as opposed to frequently occurs.

Further problematic to the defendant's claim that there is millions of dollars in controversy is that in this action, there is no claim for personal injury to any resident of Alabama resulting from receipt of a generic drug in lieu of a brand name medication.[8]   Indeed, any such action would be inappropriate for class action

---

[7]Although not alleged by the plaintiff or defendant, the court notes that it is a pharmacist, and not a pharmacy, who actually fills prescriptions.

[8]For example, in *Winn Dixie of Montgomery, Inc. v. Colburn*, an individual sued a pharmacist and the owner of the pharmacy at which the pharmacist worked for negligently or wantonly filling a prescription.  *Id*., 709 So.2d 1222 (Ala.1998).  The Alabama Supreme Court

treatment.[9]  Given the statutes under which the plaintiff states claims, only statutory penalties and fines are recoverable in this action.  In other words, assuming that residents of Alabama with mis-filled prescriptions are class members, as alleged by defendant Walmart, such class members are not entitled to **any** monetary recovery under the current complaint.  Rather, the State of Alabama and possibly one or more district attorneys' offices are the only entities which could recover any sum of money pursuant to this action.

Further obscuring any means by which to determine an "amount in controversy" is both the plaintiff's lack of a specific allegation as to the number of occurrences of such actions, and defendant Walmart's lack of any allegation concerning any specific number of times its pharmacists may have violated the law.

---

stated:

> the maximum penalty under Alabama law for dispensing a different drug or different brand drug in lieu of that ordered or prescribed, without the express permission of the person ordering or prescribing the drug, is a $1,000 fine. Ala.Code 1975, § 34-23-8. We must point out that the dispensing of prescription drugs is a matter of public trust and that one who dispenses them carelessly endangers the health and safety of the consumer. A $1,000 fine is a meager sanction for such a serious offense and provides little basis for determining a meaningful punitive damages award.

*Id*., at 1225.  No such claims or allegations of injury are made in the action before this court.

[9]If the complaint sought to have the court certify a class of "all residents in the State of Alabama who have had prescriptions dispensed other than as written by doctors" and sought damages for their individual injuries, such a class most likely would not be certified because the proposed class members would not be "similarly situated."  Some might have injuries, others not, and more than likely would depend on the drug and the illness for which it was prescribed.

Faced with similar speculation, the Southern District of Georgia recently opined that

> in their notice of removal, Defendants do not offer any evidence with
> regard to the number...that could be deemed violations.   Plaintiff's
> complaint is no more specific ... Although Plaintiff seeks treble damages
> in the amount of $1,500 for each violation, the complaint only generally
> alleges that Defendants transmitted faxes to "hundreds, if not thousands"
> of recipients.   While "hundreds if not thousands," could conceivably
> amount to 3,334 violations, it could just as reasonably be interpreted to
> mean 1,500 alleging 3,000 total violations, or $4,500,000 in damages.
> There is no evidence in the removal documents suggesting which result
> is more likely....
>
> Consequently, Defendants have not carried their burden of establishing
> subject matter jurisdiction.   To reach any other conclusion the Court
> would have to engage in speculation prohibited by *Lowery [v. Alabama
> Power Co.*, 483 F.3d 1184, 1211 (11th Cir.2007)].

C *and E, Inc. v. Friedman's Jewelers, Inc*., 2008 WL 64632, *3 (S.D.Ga.2008).   The

court thus finds defendant's monetary assertions to be unsupportable.   As noted by

the Eleventh Circuit, "[t]he absence of factual allegations pertinent to the existence

of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should

not be divined by looking to the stars."   *Lowery*, 483 F.3d at 1215.

   B.  *Members of the Class*:

   Related to the amount in controversy, the parties dispute who is actually

intended to be a member of the proposed class.   Even assuming that this court had

found the requisite $5,000,000.00 in controversy, CAFA specifically excludes from

federal jurisdiction actions in which the proposed plaintiff class contains fewer than

100 members. 28 U.S.C. § 1332(d)(5)(B). The party disputing federal jurisdiction bears the burden of demonstrating that the action is within this exception. See *e.g, Frazier v. Pioneer Americas LLC*, 455 F.3d 542 (5th Cir.2006), citing *Evans v. Walter Industries, Inc.*, 449 F.3d 1159, 1164 (11th Cir.2006).   The complaint alleges only that "many" Alabama residents could be class members.  Of course, "many" could mean any number, including 20, 200, 600, or two million.  More specifically, the complaint states it is brought "on behalf of a class of individual Alabama residents ..." but does not otherwise define the class.

The plaintiff asserts that he brings this action on behalf of the residents of Alabama who had prescriptions mis-filled as described, but fails to allege any specific person who has been injured by the alleged practice.  Indeed, without such an allegation of harm, no individual could proceed in this action, except by and through the Attorney General or a district attorney.  The Alabama Code recognizes this distinction.  Pursuant to § 8-19-10(f), Ala.Code, a district attorney may bring an action on behalf of "any named person or persons" to recover actual damages. Clearly, the recovery of actual damages requires, at a minimum, an allegation that includes a specific individual who has actually been injured by the acts alleged.  No such person or persons is named in the plaintiff's complaint, nor is any actual injury to any such individual alleged by the plaintiff's complaint.  As such, the court

12

concludes that the plaintiff can only be proceeding pursuant to § 8-19-11(b), which authorizes a suit for civil penalties payable only to the State of Alabama and credited to the office of the district attorney who initiated the action in question.

In consideration of the foregoing, the court is of the opinion that while the plaintiff, as a district attorney, may proceed as a representative of a class of Alabama residents, no such class could ever be certified under the pleadings in this case. In other words, having failed to allege that any individual has been injured by the defendant's alleged practices, the plaintiff certainly cannot assert that any particular number of Alabamians have sustained actual damages by those exact same practices. As such, no class of more than 100 individuals is named. 28 U.S.C. § 1332(d)(5)(B) specifically excludes from CAFA any action in which the "number of members of all proposed plaintiff classes in the aggregate is less than 100."

Given the foregoing, the court concludes that, under the facts of this case, the real party in interest is the State of Alabama. "[T]he dispensing of prescription drugs is a matter of public trust and that one who dispenses them carelessly endangers the health and safety of the consumer." *Winn Dixie of Montgomery, Inc. v. Colburn,* 709 So.2d 1222, 1225 (Ala.1998). See also *Ex parte Medical Licensure Comm'n of Alabama (Morrison v. Gurley),* 2008 WL 1991487, 8 (Ala.Civ.App.2008)(stating individual rights "must yield to the paramount right of government to protect the

13

public health by any rational means"); *Golden v. McCarty* 337 So.2d 388, 389 -390 (Fla. 1976) (citing *Gitlow v. People of New York*, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925), *Kahn v. Shevin*, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 315 (1974))("the State is the primary judge, and may by statute or other appropriate means, regulate any enterprise, trade, occupation or profession if necessary to protect the public health, safety, welfare or morals"); *State v. Ellis,* 78 So. 71, 72 (Ala. 1918) ("The public authorities have a right to institute the suit where the general public welfare demands it and damages to the public are not susceptible of computation. The maintenance of the public health, morals, safety, and welfare is on a plane above mere pecuniary damage..."). Clearly, the plaintiff has the ability and right to bring this action in the name of the State of Alabama itself, on behalf of the citizens of Alabama.

   C. *The Katrina Canal Litigation Breaches Case*:

   Because defendant Walmart relies heavily on *Katrina Canal Litigation Breaches*, 524 F.3d 700 (5th Cir.2008), the court finds necessary a brief explanation as to why that case is readily distinguishable from the facts of this case. In that case, the Attorney General for the State of Louisiana brought a class action against insurers who allegedly failed to pay claims following hurricanes Katrina and Rita. *Id.*, at 701. The defendants removed the case to federal court under CAFA and Louisiana filed

a motion to remand, asserting that it was immune from involuntary removal. *Id.* Although recognizing that "a State is not a person for purposes of diversity jurisdiction" the court found immunity to removal was waived by the addition of the class of private citizens in the amended complaint..." *Id.*, at 706-707.   The Fifth Circuit specifically noted that, under Louisiana law, the private citizens were necessary parties because they had made partial assignments of their insurance claims to the state in return for advanced money from the state to rebuild their homes under Louisiana's Road Home Program.  *Id.*, at 707 & n.19.  In other words, the private citizen plaintiffs in the *Katrina Canal Litigation* had a monetary interest in the outcome of the litigation.  That simply is not the case here.  Rather, this case falls within the confines of the very question the Fifth Circuit stated it would not answer, that being "whether a state as a plaintiff suing defendants over whom it has regulatory authority in state court under its own state laws may be removed to federal court on diversity grounds under CAFA..." *Id.*, at 711.

## IV. Traditional Diversity Jurisdiction

Defendant Walmart further alleges that even if this case is not removable pursuant to CAFA, it is removable under traditional diversity jurisdiction.  Notice of Removal, ¶ 23.   Defendant Walmart reached this conclusion by assuming that the plaintiff is a citizen of the State of Alabama, the parties are diverse, and that more

than $75,000.00 exclusive of interest and costs is in controversy. Notice of Removal, ¶¶ 23-31.

The plaintiff asserts that he "sues solely in his capacity as a district attorney and in the name of the State." Plaintiff's memorandum in support of motion to remand, at 8. The complaint states that he seeks relief under the ADTPA "acting in the name of the State of Alabama and on behalf of the Plaintiff Class" (*see e.g*, complaint at 8-9). He further states that he "brings this suit in the name of the State of Alabama and as the State of Alabama." Complaint, ¶ 11. Supporting his argument is the fact that none of the Alabama statutes raised in the plaintiff's complaint allow for enforcement by a consumer of a product by class action, such as the class of consumers of prescription medications referenced in the plaintiff's complaint. Rather, Title 34, Chapter 23 of the Alabama Code, entitled "Pharmacists and Pharmacies," states under the heading "Legislative declarations – Construction" that

> The practice of pharmacy and the management and operation of pharmacies are hereby declared to affect the public health, safety and welfare of the people of Alabama, and thereby subject to regulation and control in the public interest....

Ala.Code §34-23-2. That Chapter further states that "It shall be the duty of the district attorney of the judicial circuit wherein any offense is committed to prosecute violations of this chapter." Ala.Code § 34-23-93.

16

The Alabama Deceptive Trade Practices Act specifically states that

Whenever the office of the Attorney General or the office of the district
attorney has reason to believe that any person is engaging in, has
engaged in or is about to engage in any act or practice declared to be
unlawful by this chapter, the Attorney General or the district attorney
may bring an action in the name of the state against such person to
restrain ... such acts or practices.

Ala.Code § 8-19-8.  The ADTPA also provides that

All penalties collected under this section shall be remitted by the circuit
court to the state treasurer and shall be credited to the account of either
the office of the Attorney General or the office of the district attorney,
whichever initiated the action or petition resulting in imposition of such
penalties.

Ala.Code § 8-19-11(f).

The court concludes that the State of Alabama is the real party in interest in this

action.  In fact, this suit can only be brought on behalf of the state, for the above

statutes do not provide for any private enforcement.  The Fifth Circuit recently noted

that "[t]he state is the real party in interest when an action concerns a type of 'injury'

that the state either has addressed or would likely attempt to address through its laws

to further the 'well-being of its populace.'" *Louisiana ex rel. Caldwell v. Allstate Ins.*

*Co.,* 536 F.3d 418, 428 (5th Cir.2008)(quoting *Harvey v. Blockbuster*, 384 F.Supp.2d

749, 755 (D.N.J.2005) (quoting *Snapp*, 458 U.S. at 602, 102 S.Ct. 3260)).  The facts

before this court easily fall within such a definition.[10]

Because the State of Alabama is the real party in interest, the plaintiff asserts it is not a "citizen" for purposes of diversity jurisdiction and hence cannot be diverse from any party. Ample support for this proposition exists. "It is well-established that a state is not a citizen of any state for purposes of diversity jurisdiction under 28 U.S.C. § 1332." *See e.g., Alabama State University v. Baker & Taylor, Inc.*, 998 F.Supp. 1313, 1315 (M.D.Ala.1998), citing *Moor v. Alameda County*, 411 U.S. 693, 717, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). "It is absolutely undisputed that a state, qua state, is not a citizen for purposes of the diversity statute." *State of Ala. ex rel. Galanos v. Star Service & Petroleum Co., Inc.*, 616 F.Supp. 429, 430 (D.C.Ala. 1985); citing *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *State Hwy. Com'n v. Utah Constr. Co.*, 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 (1928); *Fitts v. McGhee*, 172 U.S. 516, 19 S.Ct. 269, 43 L.Ed. 535 (1899); *Postal Tel. Cable Co. v. State of Alabama*, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231 (1894). *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 412 (11th Cir.1999) ("it is well established that a state is not a citizen of a state

---

[10]As such this case is distinguishable from *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 429 (5th Cir.2008), where the act at issue plainly allowed "any person injured" to enforce a statutory provision, thus making individuals, and not the state, the "real party in interest."

for the purpose of diversity jurisdiction under 28 U.S.C. § 1332 .... if a party is deemed to be "an arm or alter ego of the State," then diversity jurisdiction must fail").

Although the question of diversity jurisdiction is separate and distinct from issues of Eleventh Amendment immunity, the Eleventh Circuit has imported its Eleventh Amendment reasoning into other contexts, namely when addressing standing and diversity. *Alabama State University v. Baker & Taylor, Inc*.  998 F.Supp. 1313, 1315-1316 (M.D.Ala.1998), citing *Coastal Petroleum Co. v. U.S.S. Agri-Chemicals*, 695 F.2d 1314, 1318 (11th Cir.1983) (where court held that the analysis for determining whether the Florida Board of Trustees of the Internal Improvement Trust Fund is a "citizen" for the purpose of diversity jurisdiction is the same as that for determining whether the entity could invoke the Eleventh Amendment immunity doctrine").

In *State of Ala. ex rel. Galanos*, the district court noted that "when a state agency files an action in state court the out of state defendant may remove on the basis of diversity if the state is not the actual party plaintiff."   *Id*., 616 F.Supp. at 430; citing *Missouri, Kan. & Tex. Ry. v. Bd. of R.R. & Warehouse Com'rs*., 183 U.S. 53, 22 S.Ct. 18, 46 L.Ed. 78 (1901).   The court continued that

Alabama law expressly confers upon the district attorney the duty of

19

prosecuting civil actions on behalf of the state. Ala.Code §§ 6-5-1, 12-17-184(3) (1975). As already mentioned, the Act confirms this authority with regards to this statutory scheme .... The Act does not, however, set up any agency, department or commission to oversee and enforce the statutory scheme.  Therefore, many of the cases enunciating the standard for determining whether a state is a party are not directly applicable. Those cases speak in terms of analyzing certain factors bearing on the state's role. *See, e.g., State of Louisiana ex rel Guste v. Fedders Corp.*, 524 F.Supp. 552 (M.D.La.1981) .... In *Olsen v. Doerfler*, 225 F.Supp. 540 (E.D.Mich.1963), a county prosecutor sued to enjoin the sale and distribution of allegedly obscene materials. In treating the contention that diversity existed the court noted that the prosecutor was a constitutional officer of the state who was enforcing Michigan law under express statutory authority. "In so doing, he was acting only in his official capacity and, consequently, the State of Michigan is the real party in interest." *Id*. at 541. *Olsen* was based on *Robertson v. Jordan River Lumber Co.*, 269 F. 606 (5th Cir.1921), in which the Fifth Circuit held that "[a] suit by an agent of the state as a nominal party in behalf of the state presents a controversy to which the state is a party, and cannot be removed." *Id*. at 607.  Similarly, in *Eure v. NVF Co.*, 481 F.Supp. 639 (E.D.N.C.1979), the court held that a suit by the secretary of state in his official capacity is a suit by the state. Eure filed an action against the defendant corporation to enforce compliance with a North Carolina securities statute. In so doing he was acting "as the alter ego of the state" so diversity did not exist. *Id*. at 641.... Finally, in *State of New York ex rel Abrams v. General Motors Corp.*, 547 F.Supp. 703 (S.D.N.Y.1982), the state attorney general sued to enjoin various fraudulent business practices allegedly performed by the defendant. In dealing with the contention that the state was not the real plaintiff, the court did not look merely to whether the attorney general was acting in his official capacity. The court also looked at factors similar to those used in resolving cases of agency action. The court found that the state had an interest in an honest marketplace and in protecting its citizens from fraud. This "quasi-sovereign" interest allows the state to act as parens patriae, and in such cases the state has a real interest in the controversy, justifying a decision that it is the real plaintiff. *Id.* at 705-06, 705 n. 5. The situation in the present case is

identical. The state of Alabama has an interest in preventing unfair or dishonest competition, monopolies, and price wars. Ala.Code §§ 8-22-2 to 8-22-3 (1975). The Act protects those interests and thereby protects both independent retailers, *Id*. at § 8-22-2(3), and the general consuming public. This is obviously a "quasi-sovereign" interest in which the state is the real party in interest....

*State of Ala. ex rel. Galanos*, 616 F.Supp. at 430-431.

In *Alabama State University v. Baker & Taylor, Inc*., the court concluded

Because the court has original jurisdiction under 28 U.S.C. § 1332 only where there is complete diversity between the parties, and because an instrumentality or alter-ego of the state is not a "citizen" of any state for purposes of diversity jurisdiction, *Moor*, 411 U.S. at 717-18, the court finds it lacks subject matter jurisdiction, and this matter was improvidently removed. Hence, pursuant to 28 U.S.C. § 1447(c), this case is due to be remanded.

*Id*., 998 F.Supp. at 1316.

Similarly, in *State of Ala. ex rel. Galanos,* the court stated that

the real party in interest in this case is the state of Alabama, represented by the district attorney.... Therefore, this Court is without jurisdiction, and this case must be remanded to the state court. It is therefore ORDERED pursuant to 28 U.S.C. § 1447(c) that this case be, and it is, REMANDED to the Circuit Court of Mobile County, Alabama, removal having been improvidently granted.

*Id*., 616 F.Supp. at 433. Similarly, this court finds that in this action, the state of

Alabama, as represented by the district attorney, is the real party in interest. As such,

the court is of the opinion that it lacks subject matter jurisdiction over the claims of

the plaintiff.

21

## V.  Conclusion

Having considered the foregoing, and finding that this case has been improvidently removed, the court shall remand this case to the Circuit Court of Jefferson County, Alabama, Bessemer Division, by separate Order.

**DONE** and **ORDERED** this the 10th  day of December, 2008.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE